IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **REDMAN & ASSOCIATES, LLC** | **PLAINTIFF/ COUNTERDEFENDANT** |
| V.     CASE NO. 5:14-CV-5277 | |
| **SALES CHIEF ENT. (HONG KONG) CO., LTD** | **DEFENDANT/ COUNTERPLAINTIFF/ THIRD-PARTY PLAINTIFF** |
| V. | |
| **MELVIN REDMAN and RODNEY REDMAN** | **THIRD-PARTY DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff/Counterdefendant Redman & Associates, LLC's ("R&A") and Third-Party Defendant Melvin Redman's Motion to Dismiss Counterplaintiff's Defamation Claim (Doc. 39) and Brief in Support (Doc. 40), Defendant/Counterplaintiff/Third-Party Plaintiff Sales Chief Ent. (Hong Kong) Co., Ltd.'s ("Sales Chief") Memorandum of Law in Opposition (Doc. 44), and R&A's and Melvin Redman's Reply (Doc. 45). For the reasons set forth herein, R&A's and Melvin Redman's Motion to Dismiss is **DENIED**.

### I. BACKGROUND

In March 2012, R&A exclusively contracted with Sales Chief to manufacture ride-on toy products. The turning point in their business relationship occurred after R&A signed a "Made in USA" contract with Walmart in November of 2013. The parties conducted business smoothly for the first few months of 2014 as Sales Chief was still R&A's exclusive supplier. However, R&A alleges that in May 2014, Sales Chief

unilaterally changed the shipping terms for the products arriving at port in California, which prevented R&A from taking possession of the goods and disrupted their production schedule and agreement with Walmart. Sales Chief, on the other hand, alleges that R&A breached the contract by failing to pay and that Sales Chief was fraudulently induced into entering the contract.

On February 15, 2015, R&A filed its First Amended Complaint (Doc. 21) in this Court against Sales Chief alleging (1) breach of contract, (2) tortious interference with business contract and expectancy, (3) misappropriation of trade secrets, and (4) breach of express and implied warranties of non-infringement. On April 2, 2015, Sales Chief filed its Answer, Affirmative Defenses, Counterclaim, Third-Party Claims, and Jury Demand (Doc. 38) alleging (1) breach of contract against R&A, (2) fraud against Melvin Redman, Rodney Redman, and R&A, and (3) defamation against Melvin Redman and R&A. R&A and Messrs. Redman filed their Answer to Counterclaims and Third Party Claims (Doc. 43) on April 14, 2015.

Sales Chief alleges that R&A and Melvin Redman made false and defamatory statements to the media, which were published in various news articles. (Doc. 38, ¶¶ 53-57). One example stated in their pleading is from an *Arkansas Business* article dated September 5, 2014. In the article, Melvin Redman is quoted as saying that Sales Chief "engaged in an 'underhanded strategy' in an attempt to disrupt Wal-Mart Stores Inc.'s initiative to bring manufacturing jobs to the United States . . . [which] effectively stopped the flow of goods to Wal-Mart shelves at a critical time for the large holiday order." *Id.* at ¶ 34 (alteration in original).

On April 2, 2015, R&A and Melvin Redman filed a Motion to Dismiss (Doc. 39) and Brief in Support (Doc. 40) asking the Court to dismiss Sales Chief's claim of defamation for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Sales Chief filed its Memorandum of Law in Opposition (Doc. 44) on April 16, 2015, and R&A filed its Reply (Doc. 45) on April 17, 2015. R&A's and Melvin Redman's Motion is now ripe for consideration by the Court.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept as true all factual allegations set forth in the complaint by Plaintiff, drawing all reasonable inferences in Plaintiff's favor. *See Ashley Cty. Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Nevertheless, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual

3

enhancement.'" *Id.* Simply put, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In applying this standard to the instant pleadings, the Court must accept as true all factual allegations set out in the pleadings by Sales Chief, and construe the pleadings in the light most favorable to Sales Chief, drawing all inferences in Sales Chief's favor. *See Ashley County*, 552 F.3d at 665.

### III. DISCUSSION

R&A argues that Sales Chief's defamation claim should be dismissed because the alleged defamatory statements are absolutely privileged such that they are immune from liability regardless of truth/falsity, malice, or ill will. (Doc. 39, p. 2, ¶ 4). The parties agree that Arkansas law governs this matter. The application of absolute privilege is a question of law to be decided by the court. *Pogue v. Cooper*, 284 Ark. 202, 205 (1984). When analyzing whether allegedly defamatory statements are privileged under Arkansas law, Arkansas courts look to the Restatement (Second) of Torts. *See Pinkston v. Lovell*, 296 Ark. 543, 548 (1986) (applying Section 586 of the Restatement in determining whether an attorney's statements were absolutely privileged); *Selby v. Burgess*, 289 Ark. 491, 494 (1986) (applying Section 586 of the Restatement to determine whether an attorney's statements made preliminary to a proposed judicial proceeding were absolutely privileged); *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 243 (1998) (applying Section 587 of the Restatement to determine whether a party's statements made in court on the witness stand were absolutely privileged).

> Section 587 of the Restatement (Second) of Torts states:
>
> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Under the plain language of this section, then, this Court must perform a two-pronged analysis. "First, the *occasion* of the communication must be examined to determine if the statement was made preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding." *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 (8th Cir. 1979) (emphasis added) (internal quotation marks omitted). Second, "the *content* of the statement must be evaluated to determine if it has some relation to the proceeding." *Id.* (emphasis added) (internal quotation and parenthetical marks omitted).

When analyzing the occasion prong, "the pivotal factor is frequently to whom the matter is published." *Id.* "Publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." *Id.*; see also *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 554 (8th Cir. 1996) (citing with approval *Asay*, 594 F.2d at 697-98, for the proposition that "[a]n attorney is not absolutely privileged to make defamatory statements to the news media when the news media is unconnected with a proposed judicial proceeding"); *Kleir Adver., Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1043-44 (10th Cir. 1990) (quoting *Kirchstein v. Haynes*, 788 P.2d 941, 951 n.27 (Okla. 1990) for the proposition that "*unecessary publication to the news media may result*

5

*in loss of the privilege,* as well as publication to those wholly unconnected with the judicial process" (emphasis in *Kleir*)).

In *Asay*, the Eighth Circuit held that under the Restatement as adopted by Iowa law, the absolute privilege did not apply to dissemination of a complaint to a news service after the lawsuit was filed because the newspaper was not connected with the judicial proceeding. *Asay*, 594 F.2d at 698. Similarly, in *Scott Fetzer Co.*, the Eighth Circuit held that under the Restatement as adopted by Minnesota law, an attorney was not absolutely privileged to send a newspaper a copy of a letter threatening litigation against another individual, as the newspaper was not a potential party to the threatened lawsuit. 101 F.3d at 553-54. Just as in *Asay* and *Scott Fetzer Co.*, Sales Chief alleges that R&A and Melvin Redman made defamatory remarks to various news services, including *Arkansas Business* and *Northwest Arkansas Business Journal*, both of which are clearly unconnected to this judicial proceeding.

This Court is not aware of any cases in which the Arkansas Supreme Court has confronted facts or allegations that are strongly analogous to those of the instant case. However, this Court believes that if confronted with this issue, the Arkansas Supreme Court would interpret Section 587 in a manner consistent with *Asay* and *Scott Fetzer Co.*, and hold that R&A's and Melvin Redman's allegedly defamatory remarks to news services are not privileged, as the news services in question are not connected with this judicial proceeding. *See Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1301 (8th Cir. 1993) ("[T]he district court's task [is] to predict how the Arkansas Supreme Court would resolve the issue if confronted with it."). R&A and Melvin Redman argue that allowing Sales Chief

6

to move forward on its defamation claim would open up the floodgates for "naked defamation claims" and permit "an otherwise ordinary lawsuit to expand to include defamation claims and counterclaims in every direction the moment media coverage begins." (Doc. 45, p. 3). However, the reasoning in *Asay* thoroughly counters this argument:

> Allowing defamation suits for communications to the news media will not generally inhibit parties or their attorneys from fully investigating their claims or completely detailing them for the court or other parties. Also, the important factor of judicial control is absent. The salutary policy of allowing freedom of communication in judicial proceedings does not warrant or countenance the dissemination and distribution of defamatory accusations outside of the judicial proceeding. No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another, but rather such person should be called upon to prove the correctness of his allegations or respond in damages. The privilege or immunity granted to defamatory statements in judicial proceedings is a narrow one. The scope of the privilege is restricted to communications such as those made between an attorney and client, or in the examination of witnesses by counsel, or in statements made by counsel to the court or jury. Thus, while a defamatory pleading is privileged, that pleading cannot be a predicate for dissemination of the defamatory matter to the public or third parties not connected with the judicial proceeding. Otherwise, to cause great harm and mischief a person need only file false and defamatory statements as judicial pleadings and then proceed to republish the defamation at will under the cloak of immunity.

*Asay*, 594 F.2d at 698 (internal citations and quotation marks omitted).

Finally, two other cases should be distinguished. First, in *Jones v. Clinton*, the district court held that absolute privilege protected the President's allegedly defamatory statements made prior to the litigation where the plaintiff publicly asked the President to apologize to her for the alleged incident. 974 F. Supp. 712, 731-32 (E.D. Ark. 1997). There the court first acknowledged the general rule that "there is no absolute privilege to make defamatory statements to the news media *when the news media is unconnected*

*with a proposed judicial proceeding.*" *Id.* at 731 (emphasis added). The court reasoned, nonetheless, that it would extend the privilege:

> But where, as here, the challenged statements were nothing more than mere denials of the allegations and the questioning of plaintiff's motives (both of which mirror the statements contained in the answer to the complaint), and where such statements were only made following an event attended by the media in which the plaintiff and her attorney publically solicited a response from the party to whom the allegedly defamatory statements are attributed and then filed a lawsuit less than three months later, the Court has no hesitation in concluding that such statements qualify as statements made prior to and in connection with possible litigation and are therefore absolutely privileged.

*Id.* at 731-32. *Jones* is distinguishable from the case at bar because here the alleged defamatory statements were not solicited by the plaintiff, nor were they mere denials of certain allegations.

Second, in *Johnston v. Cartwright*, the Eighth Circuit extended absolute privilege to an attorney's allegedly defamatory statement to a newspaper concerning impending litigation. 355 F.2d 32, 37-38 (8th Cir. 1996). However, the *Asay* Court distinguished *Johnston* on the grounds that in *Johnston* "[t]he newspaper was a potential party and the attorney's comments directly related to a defense that the newspaper might wish to assert." *Asay*, 594 F.2d at 698. Here, as in *Asay*, the news services to whom the allegedly defamatory statements were made are not parties or potential parties to these proceedings, and thus the complained-of statements do not fit within the occasion to be absolutely privileged. Since the "occasion" prong is not met here, the statements are not absolutely privileged and there is no need for the Court to address the "content" prong of the absolute-privilege analysis.

8

## IV. CONCLUSION

R&A's and Melvin Redman's allegedly defamatory statements to the news media are not absolutely privileged, because the statements were made to entities that are not connected with the instant judicial proceeding. **IT IS THEREFORE ORDERED** that Plaintiff/Counterdefendant Redman & Associates, LLC's and Third-Party Defendant Melvin Redman's Motion to Dismiss Counterplaintiff's Defamation Claim (Doc. 39) is **DENIED.**

**IT IS SO ORDERED** on this 23rd day of October, 2015.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE